UNITED STATES of America,
Plaintiff–Appellee,

v.

Stephen P. KEZERLE, Defendant–Appellant.

No. 96–1189.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 1, 1996.

Decided Nov. 4, 1996.

---

Barry Rand Elden, Chief of Appeals, Patrick Collins (argued), Office of U.S. Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

Luis M. Galvan (argued), Office of Federal Defender Program, Chicago, IL, for Defendant–Appellant.

Before CUMMINGS, COFFEY and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Robert Tezak, a prominent suburban Chicago businessman, hired Stephen Kezerle to burn down a building Tezak owned in Joliet, Illinois. Kezerle was commissioned for the task based on his formidable criminal resume which included other arsons, skillfully performed. Tezak wanted the building torched so he could collect insurance and destroy documents stored there that were under subpoena by a federal grand jury. In December 1987 Kezerle did the deed; the building and the records in it were completely destroyed.

Federal investigators ultimately arrested Kezerle, Tezak, and several others, and in 1995 Kezerle pleaded guilty to a federal arson charge. As part of his guilty plea, Kezerle stipulated that he committed a series of unrelated offenses—including three other acts of arson, three acts of mail fraud, armed robbery, and possession of dynamite by a convicted felon—between 1987 and the time of his sentencing.

In preparing Kezerle's presentence report in 1996, the Probation Office used the 1987 version of the sentencing guidelines—the version in effect when the Joliet building was destroyed. The 1987 version was used to avoid *ex post facto* problems because its terms were more favorable to Kezerle than the 1995 version—the version in effect at the time of Kezerle's sentencing. Neither the defense nor the government objected to the use of the 1987 version of the guidelines.

Because of his extensive criminal history, Kezerle indisputably had a criminal history category of VI. Kezerle's crime, coupled with relevant conduct and additional offenses to which he stipulated, yielded an offense level of 28 under the federal sentencing guidelines.[1] The guidelines range was 140–175 months, which exceeded the statutory maximum sentence of 10 years imprisonment for arson under the circumstances of this case.

Because the guideline range surpassed the statutory cap of 10 years, everyone quickly agreed that the real sentencing issue was whether the judge would order Kezerle's sentence to be served concurrent with or consecutive to a previously imposed 44–year state sentence. The 44–year sentence (actually two 22–year consecutive sentences) was ordered by an Illinois state court in May of 1993 following two sexual assault convictions where Kezerle forced a 3–year–old girl to perform an act of oral sex on him. As part of Kezerle's plea agreement in this case, the government agreed to remain mum on whether the federal sentence should run with or after the state sentence. Prior to his sentencing hearing Kezerle submitted a memorandum of law to the district court, arguing that the judge had discretion to or-

---

1. The calculations used to reach this total offense level are rather complex, involving various groupings and multiple-count adjustments. At Kezerle's sentencing hearing, the government did raise a question as to whether Kezerle's total offense level should have been 31, rather than 28. Given Kezerle's criminal history category of VI, however, either offense level would have placed his guideline sentencing range above the statutory maximum sentence of 10 years imprisonment for arson, and thus, regardless of which offense level the court considered, Kezerle's sentence would have been the same—the statutory maximum. In any event, neither party raises any issues related to Kezerle's total offense level in this appeal.

der either consecutive or concurrent terms. To no one's surprise, Kezerle naturally asked for a concurrent term. At sentencing, the district court listened to statements from Kezerle and his attorney regarding the appropriate way to structure the federal sentence. Ultimately, the court ordered Kezerle to serve his federal sentence consecutively to his state sentence. This appeal followed.

■ The sole issue Kezerle raises is whether the district court properly exercised its discretion in imposing a consecutive sentence. According to Kezerle, the district judge sentenced him to serve a consecutive sentence because he erroneously believed he had no discretion to impose a concurrent term. Section 5G1.3 of the 1987 guidelines, under which Kezerle was sentenced, provided:

> If at the time of sentencing, the defendant is already serving one or more unexpired sentences, then the sentences for the instant offense(s) *shall run consecutively* to such unexpired sentences, unless one or more of the instant offense(s) arose out of the same transactions or occurrences as the unexpired sentences. In the latter case, such instant sentences and the unexpired sentences *shall run concurrently....*

(Emphasis added.) The mandatory language of this guideline is in tension with 18 U.S.C. § 3584(a), which gives the district court discretion as to whether to run sentences concurrently or consecutively. Section 3584(a) provides (in relevant part):

> [I]f a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms *may run* concurrently or consecutively....

(Emphasis added).

Although we have not had the opportunity to resolve the apparent tension between the 1987 version of U.S.S.G. § 5G1.3 and 18 U.S.C. § 3584(a),[2] we have held in other cases that where the sentencing guidelines conflict with a federal statute, the latter controls. *See, e.g., United States v. Holloway,* 991 F.2d 370, 374 (7th Cir.1993). Similarly, those circuits that have directly addressed the tension between the 1987 version of U.S.S.G. § 5G1.3 and 18 U.S.C. § 3584(a) have generally reconciled the two provisions by holding that although § 5G1.3 creates a presumption in favor of consecutive sentences, a district court retains the discretion to depart from § 5G1.3 and impose concurrent sentences. *See United States v. Flowers,* 995 F.2d 315, 317 (1st Cir.1993); *United States v. Shewmaker,* 936 F.2d 1124, 1128 (10th Cir.1991), cert. denied, 502 U.S. 1037, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992); *United States v. Pedrioli,* 931 F.2d 31, 32 (9th Cir.1991); *United States v. Stewart,* 917 F.2d 970, 972 (6th Cir.1990); *United States v. Miller,* 903 F.2d 341, 349 (5th Cir.1990); *United States v. Rogers,* 897 F.2d 134, 136–37 (4th Cir.1990); *United States v. Fossett,* 881 F.2d 976, 980 (11th Cir.1989). But see *United States v. Nottingham,* 898 F.2d 390, 393–94 (3d Cir.1990) (holding that U.S.S.G. § 5G1.3 and 18 U.S.C. § 3584(a) are in direct conflict, and that § 3584(a) therefore controls). Thus, if Kezerle were correct that the district judge believed that § 5G1.3 stripped him of authority to impose a concurrent sentence, his argument might have merit.

The record does not, however, support Kezerle's claim that the district judge misunderstood the discretion he possessed. First, Kezerle's sentencing memorandum clearly explained that the court had discretion under § 3584(a) to impose either a consecutive or concurrent sentence. At his sentencing hearing, the judge said, "I have read [Kezerle's sentencing memorandum]. Actually, I have reread it." Moreover, the judge did not ask for any *legal* argument from the govern-

**2.** We have also noted that amendments to § 5G1.3 subsequent to the 1987 version gave district courts the discretion to fashion appropriate concurrent or consecutive sentences, thereby "clarif[ying] authority already possessed pursuant to 18 U.S.C. § 3584(a)." *United States v. Goudy,* 78 F.3d 309, 314 n. 4 (7th Cir.1996). At oral argument, Kezerle's counsel argued—for the first time—that the district court failed to recognize its authority under Goudy to sentence Kezerle to a partially concurrent term of imprisonment. As this argument was raised for the first time at oral argument, we need not address it. *Sample v. Aldi, Inc.,* 61 F.3d 544, 551 n. 1 (7th Cir.1995) (argument which was raised for the first time at oral argument was waived for purposes of appeal).

ment on this issue, which strongly suggests that he did not disagree with Kezerle's position that he had discretion in the matter. Finally, it should be noted that the government didn't argue that the judge's hands were tied as its attorney seems to have accepted the view that the judge had discretion.

Also, the district judge pointedly acknowledged that the only issue before him was whether to impose a consecutive or concurrent sentence. In asking the parties for their *factual* arguments as to whether a concurrent or consecutive sentence would be appropriate, the judge repeatedly asked whether the sentence "should" or "ought" to be consecutive. In passing sentence, the judge said, "I think that my judgment will be 120 months consecutive." This clearly indicates that the judge was aware of the discretion he had. He did not feel bound by the guidelines. Furthermore, the judge recognized, albeit in a backhanded way, that he had discretion on this issue when he stated that to impose a concurrent sentence here would be an abuse of discretion.

Finally, and most significantly, one-half of the sentencing hearing, covering many pages of the transcript, dealt solely with the question of whether consecutive or concurrent terms should be imposed. Had the judge thought this issue entirely foreclosed by the guidelines, the entire discussion would have been merely an academic exercise. Thus, nothing in the record supports Kezerle's assertion that the district judge misunderstood his discretion when he imposed a consecutive term.

■ Kezerle's final argument is that the district court should have considered the "global calculation" methodology, under which a district court considers what the defendant's aggregate sentence would have been had all of his offenses (i.e., both the offenses for which he is serving the undischarged term of imprisonment and the offenses for which he is being sentenced) been federal offenses for which sentences were imposed at the same time. This methodology appears in the comment to the 1994 version of U.S.S.G. § 5G1.3 but not in its 1995 form. Because a defendant may be sentenced only under the guidelines in effect at the time of sentencing (or, if use of that version would violate the *ex post facto* clause, then the guidelines in effect at the time of the commission of the crime of conviction), U.S.S.G. § 1B1.11, *United States v. Brassell,* 49 F.3d 274, 277 (7th Cir.1995)—and even then, the chosen version must be applied in entirety, *United States v. Boula,* 997 F.2d 263, 265–66 (7th Cir.1993)—the methodology of the 1994 guidelines is irrelevant for this case.

Finally, we pause to note that a claim that a seasoned judge—and Judge Andersen here fits that definition—didn't understand his discretion will rarely, if ever, be successful when built merely on inference. Article III judges are presumed to know the law, and Judge Andersen did in this case. The judge had, and the record supports the conclusion that he knew he had, the authority to sentence Kezerle to either a concurrent, partially concurrent, or consecutive term. Such was the law in 1987, and so it is today. Kezerle received a consecutive sentence not because Judge Andersen thought he had no options, but rather because Kezerle's horrid record called for a stiff jolt. We affirm the judgment of the district court.